## M. R. Weidner et al. v. Catharine Mary Lund.
## Same v. Catherine J. Zimmer.
## Same v. A. W. Lund.

1. FREEHOLD—*Title to Real Property May be Determined in Action of Trespass Quare Clausum Fregit.*—The title to real property may be determined by a judgment rendered in an action of trespass *quare clausum fregit.*

2. RES JUDICATA—*Upon What the Doctrine Rests.*—The doctrine of *res judicata* does not rest entirely upon the fact that a particular proposition has been affirmed and denied in the pleadings, but rather upon the fact that such proposition has been fully and fairly investigated and tried, that the parties have had an adequate opportunity to say and propose all that they can in relation to it, and that the minds of court and jury have been brought to bear upon it and so it has been solemnly and finally adjudicated.

3. SAME—*Judgment Turns Only upon Those Things Concerning Which There Necessarily Must Have Been Adjudication.*—The judgment in a trial does not turn upon all that was controverted but only upon those things concerning which there necessarily must have been adjudication.

4. SAME—*Matters Not Concluded by Judgment.*—Matters which can only be inferred by argument or inference from a judgment are not concluded by a judgment.

Trespass, *quare clausum fregit.*—Three cases consolidated. Appeals from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed January 16, 1903.

I. T. GREENACRE and OTTO F. REICH, attorneys for appellants.

JOHN C. TRAINOR, attorney for appellees.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This case originated in three actions of trespass begun before a justice of the peace. For the purposes of trial the actions were consolidated, substantially all the facts of one case being applicable to the others. The controversy arose out of the action of certain officers of the village of Dalton in removing fences, which the respective plaintiffs claim were upon land belonging to them; the village officers insisting that the fences were in a public street and constituting obstructions thereto which were by them properly removed. In other words, the plaintiffs insisted that the *locus in quo*, the place where the fences were, was a freehold belonging to them, respectively, while the defendants insisted that the *locus in quo* was a freehold belonging to the public, namely, to the village of Dalton, whose officers they were and in whose behalf they acted in removing the fences.

The justice of the peace having found and rendered judgment against the defendants, appeals were taken to the Superior Court, where the cases were tried as a consolidated action and the appeal to this court is in like manner one appeal.

Appellee in this court has moved to dismiss the appeals, because, as he insists, a freehold is involved and therefore the appeal should have been taken to the Supreme Court. The title to real property may be determined by a judgment rendered in an action of trespass *quare clausum fregit.* Outram v. Morewood, 3 East, 346; King v. Chase, 15 N. H. 9; Lentz v. Wallace, 17 Pa. St. 412.

While the action before the justice of the peace was only of trespass to recover damages for an alleged unlawful trespass upon real property, yet in such action the real question, issue, and the fact upon which the decision of the justice necessarily was based, was, in whom was the freehold ? in the public, represented by the defendant, or in the plaintiffs ?

The doctrine of *res judicata* does not rest entirely upon the fact that a particular proposition has been affirmed and denied in the pleadings, but rather upon the fact that such

proposition has been fully and fairly investigated and tried, that the parties have had an adequate opportunity to say and propose all that they can in relation to it, and that the minds of court and jury have been brought to bear upon it and so it has been solemnly and finally adjudicated. Black on Judgments, Sec. 614.

The proposition which has thus been presented and adjudicated must have been one that, under the proceedings, there was necessarily judgment upon. And such necessary adjudication and judgment may be shown by the evidence presented in the cause, as well as by the pleadings. There is, however, the distinction to be always borne in mind between facts in controversy and facts in issue. In most trials many facts are in controversy, while but one or a few facts are actually adjudicated upon; that is to say, the judgment does not turn upon all that was controverted but only upon those things concerning which there necessarily must have been adjudication in order that the judgment finally found could be arrived at. Potter v. Baker, 19 N. H. 166; Bigelow on Estoppel, 5th Edition, 99; Freeman on Judgments, Sections 258-259; Burt v. Sternburgh, 4 Cowen, 559.

Matters which can only be inferred by argument or inference from a judgment are not concluded thereby. Black on Judgments, Sec. 612.

Had this action been originally brought in the Superior Court, a declaration in trespass *quare clausum fregit* been filed to which there had been a plea of *liberum tenementum*, and the same evidence there produced that was given upon the hearing of the present case in the Superior Court, an appeal from the judgment therein rendered would not have lain to this court, but must have been taken to the Supreme Court; because such action, while sounding in damages, would necessarily have involved a freehold, and by the judgment of the Superior Court the freehold title of either plaintiff or defendants would have been established; as the same pleas might in the action before the justice of the peace have been orally stated, and were upon the trial of

the present case actually stated in the Superior Court, and the verdict of the jury and the judgment of the Superior Court turn upon the question of whether the freehold in dispute was that of the plaintiff or the defendant, why is not a freehold involved in the present case? Why should not the appeal, as appellees contend, have been taken to the Supreme Court? The Superior Court had in the present case, upon the appeal thereto from the justice of the peace, jurisdiction to do only that which the justice of the peace might have done. In other words, upon an appeal from a justice of the peace to the Supreme or Superior Court, such Appellate Court has and can exercise in such action only such jurisdiction as to the extent of the remedy afforded and the effect of its judgment, as the justice of the peace had in the action before him. It therefore follows that if by the judgment of the justice of the peace neither party could have lost or gained a freehold, by the judgment of the Superior Court rendered upon appeal from such justice, a freehold can not be established in either party.

While it is true that in the trial before the justice as upon the trial in the Superior Court, the ultimate fact to be determined, namely, whether the defendants had trespassed upon the land of the plaintiffs, depended upon whether the land or the place at which the alleged trespass was said to have been committed, was the freehold estate of the plaintiffs or the defendants; and such fact was one which in that case it was proper for both the justice of the peace and the Superior Court upon appeal to hear evidence concerning, and pronounce judgment as to; yet the effect of such judgment, begun before a justice of the peace, was not what it would have been if the action had been begun in the Superior Court, because under the statute of this state the judgment of a justice of the peace can not give or take away a freehold; necessarily the judgment of the Superior Court upon appeal from said justice can not do this.

Upon an action before a justice of the peace for an alleged personal assault the defendant might reply that, true, he did lay violent hands upon the plaintiff, but that he did so only

as sheriff of the county and in the discharge of his duties as such sheriff, to which the defendant might reply that the plaintiff was not at the time, etc., the sheriff of the said county, but that he, the defendant, was then and there the sheriff of such county. The justice of the peace, notwithstanding such pleadings, might go on to hear evidence for the purpose of determining whether a personal assault had been made, and in the determination of such controversy might hear evidence as to whether the plaintiff was at the time of the alleged assault sheriff of the county, and might, in effect, by his judgment for the plaintiff or for the defendant, pass upon such question; yet neither the reception and hearing of such evidence, nor the judgment would be in another action an estoppel upon either party as to the question of who was the sheriff of the county, because the justice of the peace would have had no jurisdiction to determine such question.

In Pitts v. Looby, 142 Ill., page 534, the Supreme Court say :

" It may be admitted that a freehold was incidentally involved in the litigation, but no judgment could have been rendered that either party was possessed of a freehold under any possible evidence, for the plain reason that the jurisdiction of the justice of the peace did not extend that far, but was limited to the damages to real property to be recovered, and in this case is entirely different from an action of trespass *quare clausum fregit* in the Circuit Court and a trial on the plea of *liberum tenementum*, since a freehold was only incidentally involved. The appeal from the Circuit Court was properly to the Appellate Court."

We do not regard the case of Town of Brushy Mound v. McClintock, 146 Ill. 643, or that of the Village of Dolton v. George A. Dolton, 196 Ill. 154, as inconsistent with the conclusion to which we have arrived. It is, to be sure, the case that the case of the Village of Dolton v. George A. Dolton grew out of an action brought before a justice of the peace, and was concerning the very road now under consideration, and the same kind of a trespass, but the case reported in the 169 Illinois, at page 154, was upon a decree in chancery, in which decree, in express terms, the complainant in

the bill was found to be the owner in fee simple of the real estate in controversy.   In the present case, as neither party can gain or lose a freehold by the decision of this case, the appeal was properly taken to this court.

Near the close of the trial in the Superior Court the following occurred :

" Mr. Trainor :   I would like to suggest now, if Your Honor please, the plaintiffs have had their innings and the defendants have had theirs, and the jury have sat here and heard all of this evidence; I would like to suggest now that this jury be permitted to go out there and look over this road.

The Court :   No.

Mr. Trainor :   I will say that the plaintiffs will pay either half or the whole of the expense of this jury going and then, Your Honor, they can see who is right and who is wrong.   Now, that is a fair suggestion, Your Honor, and they do not have to depend upon the evidence of witnesses; they can see it with their own eyes whether it is a public road and whether it has been used from the west end to the east end.

The Court :   This jury has been here now, this is the third week, and it would take half a day for them to go out there.

Mr. Trainor :   This litigation has been going on ever since last Wednesday, and I would like to have this jury see the premises.   I will agree to cut one hour of my argument short—

The Court :   You will likely have to do your arguing within the hour.

Mr. Trainor :   Do I understand that the jury will not be permitted to go out to view the premises ?

The Court :   I will not send the jury out.   Proceed.

Mr. Trainor :   Every lawyer in this court here has to do as Your Honor directs, and I always submit with all courtesy on my part to the direction of the court.

The Court :   Proceed.

Mr. Trainor :   Do I understand then that my offer is rejected ?

The Court :   I will not send the jury out there unless you show me that I must.   There are certain cases where it is almost an absolute necessity for the jury to see the premises, but I hardly think this is one of them.   Proceed with your rebuttal.

Mr. Trainor: You are the judge here, but would not it be better for this jury to go out there to see this road? I can not say to the court that he must send this jury out, but why would it not be proper to go out and see this road; to have this jury see this road, and we will pay all the expenses of their going; that is as fair an offer as it is possible to make. We will pay all the expenses for their going.

The Court: Proceed with this rebuttal.

Mr. Trainor: I would like to suggest further, Your Honor, that the jury might congregate at an earlier hour in the morning and in that way save time. We would make arrangements for trains and get out there and see the road; they might congregate say at as early an hour as Your Honor might suggest—nine o'clock sharp—we would arrange for trains.

The Court: Will you kindly proceed with your rebuttal?

Mr. Trainor: I desire to except to the court's refusal to permit the jury to go out there; to the court's refusal of counsel's offer.

The Court: If you wanted the jury to go out there you should have made that a private matter between counsel and the court and agree as to who should pay the expenses.

Mr. Trainor: Well, suppose we both pay it, but I said we would pay all if the—

Mr. Greenacre: I object to any statements before this jury in regard to the payment of money for the expenses of a trip down there.

The Court: If you have any questions to ask this witness, you may proceed and ask them.

Mr. Trainor: I stated that we could both contribute to the expense of going out there and no one would be prejudiced thereby.

Mr. Greenacre: I object to counsel's remarks and ask for a ruling; the remark that he would pay the costs or let both sides contribute.

The Court: I simply will not permit this jury to go out there, proceed.

Mr. Greenacre: Will Your Honor give me the benefit of a ruling?

The Court: Yes.

Mr. Greenacre: I think it should be stricken out, all statements made in the presence of the jury in regard to payment of expenses.

Mr. Trainor: I do not see any harm where both sides pay one-half."

Weidner v. Lund.

The case had been hotly contested, much evidence of a most contradictory character had been heard, many witnesses had testified; the record of such testimony embraces nearly 500 pages. The persistent and repeated offers of counsel for the plaintiffs to have the jury go out and view the premises, he, such counsel, in the presence and hearing of the jury repeatedly offering to pay one-half or all the expenses of such action, his argument before the jury that the personal inspection, which he requested should be ordered, would enable the jury to come to a conclusion without reference to the testimony of witnesses; and this repeated after his request had been denied, was such conduct that we think therefor the judgment of the Superior Court should be reversed.

Under the evidence, the case was not turning at all upon what the condition of the place where these fences were destroyed was at the time of the trial, but largely upon what the situation as to this alleged street, the use and occupancy of the same, had been by the public for fifteen years prior to the alleged trespass. We can not say, and we regard it as altogether likely that the jury may have thought from the persistent insistence of counsel for the plaintiff that they should be afforded an opportunity to see the place and thus to judge from their own inspection as to what the merits of the controversy were, that the defendants wished to conceal the truth and the plaintiff to have all the facts known.

The significance of instruction marked in the abstract " 23," given at the instance of the plaintiff, is, probably by a *lapsus pennæ*, very uncertain. This same is true of instruction marked " 14." The latter part of instruction marked " 15," beginning " in order," is inconsistent with that which precedes these words. The first part of this instruction is misleading, and should not have been given in this case.

The judgment of the Superior Court is reversed and the cause remanded.