**Christopher Harrigan, Individually and as Administrator of the Estate of Kate Harrigan, Deceased, Complainant-Appellant, v. William E. Stone, Defendant-Appellee.**

**William Harrigan et al., Cross Complainants-Appellees, v. Christopher Harrigan et al., Cross Defendants-Appellants.**

### Gen. No. 7,143.

1. APPEAL AND ERROR—*account not reviewable where facts showing alleged error not pointed out in brief.* Alleged errors in an account rendered before a master will not be reviewed where the facts and circumstances upon which the errors are alleged to exist are not pointed out in the briefs or discussed therein.

2. ESTATES OF DECEDENTS—*right of public administrator to administer estate after term of office expires.* A public administrator who qualified as administrator *de bonis non* of the estate of a decedent is entitled to claim funds of the estate of such decedent awarded to such estate after the termination of his tenure of office, since he has the right to finish his duties in unsettled estates after expiration of his term of office.

3. ESTATES OF DECEDENTS—*when heirs not bound by releases of securities to administrator made in ignorance of rights.* A chancellor's order directing the holder of certain securities claimed by complainant individually to turn them over to a receiver is not erroneous where heirs claim such funds as belonging to their intestate, and the evidence fails to show complainant's exclusive

right thereto, and acquittances obtained by him from such heirs releasing such securities to him were given by the heirs in ignorance that the securities, which he had not inventoried as a part of the intestate's estate as administrator thereof, were taken by him from the intestate's safe deposit box and pledged with the holder to indemnify him on an appeal bond.

4. ESTATES OF DECEDENTS—*when administrator properly held accountable for uninventoried assets claimed by him individually.* In a proceeding by complainant individually and as administrator of the estate of a decedent against one to whom certain securities had been pledged by complainant and his intestate in her lifetime to indemnify defendant on an appeal bond, a decree directing complainant to pay over and account for such securities as had not been inventoried by complainant in his intestate's estate, to a receiver appointed on the petition of intervening heirs, is not erroneous where the evidence shows that the securities were taken from a safe deposit box rented by the intestate and had belonged to her in her lifetime and there is no evidence of any transfer to complainant individually by the intestate, except improbable testimony of complainant and his sister.

5. SAVING QUESTIONS FOR REVIEW—*objection or exception before master or chancellor as prerequisite to review.* Alleged error of a master in not crediting complainant, on an accounting with an amount claimed by him to have been distributed by him to the intervenors as heirs of a particular decedent, is not reviewable on appeal from the decree in the accounting suit where the question was not raised by complainant by objection before the master or exception before the chancellor.

6. ACCOUNTING SUITS—*when dismissal of cross-bill and intervening petitions properly refused.* In a proceeding by complainant individually and as administrator of the estate of his deceased sister for an accounting against one to whom complainant and such sister turned over certain securities during her lifetime to indemnify him for an appeal bond, cross-bills and intervening petitions by heirs of such sister, claiming the securities as assets of the estate of such decedent which had not been inventoried by complainant as administrator of her estate, as against complainant's claim that they belonged to him individually, were not dismissable for want of equity where the evidence showed that the securities had been the property of decedent during her lifetime and were taken from her safe deposit box and pledged with defendant as security, that they had never been transferred to complainant by decedent, and had not been included by him in the inventory and that acquittances from the intervenors to him releasing such securities had been executed by them in ignorance of the facts.

Harrigan v. Stone, 230 Ill. App. 413.

7.　ACCOUNTING SUITS—*when cross-bill and intervening petition raising collateral matters germane to original bill for accounting.* In a proceeding by complainant individually and as administrator of the estate of his deceased sister for an accounting as to certain securities pledged by them during the sister's lifetime, with the original defendant as security to indemnify him for an appeal bond, which securities complainant claimed individually, cross-bills and intervening petitions by other heirs of the deceased sister claiming that such securities belonged to the estate of the sister, and also claiming a right to other funds not pledged but in the hands of complainant under claim of ownership by him, on the ground that none of such securities had been included by complainant in the inventory of his sister's estate, and necessarily involving as to both classes of securities the rights of intervenors as heirs of the sister, are sufficiently germane to the original bill to permit determination of all matters in the one proceeding.

8.　ESTATES OF DECEDENTS—*receipts obtained by administrator from heirs by fraud not merged in final order of approval.* Final receipts given by heirs releasing the administrator are not so merged in the final order of the probate court approving the administrator's final report as to be conclusive against the heirs where it appears that the receipts were obtained by the administrator by fraud and concealment, and such settlement may be reviewed in equity in a proper proceeding.

9.　ESTATES OF DECEDENTS—*when distribution of assets concealed by administrator may be had in equity in circuit court.* In a proceeding instituted by an administrator as such and also individually for an accounting as to certain securities pledged by him and his intestate during her lifetime to the original defendant to indemnify him for an appeal bond, distribution may be had in equity by the circuit court without ouster of the probate court of jurisdiction, where cross-bills and intervening petitions were filed by the heirs of such decedent claiming such securities and other securities not pledged but held by complainant, who claimed all the securities as his individual property, and the evidence sustains the claim of the intervenors and shows that complainant did not inventory the securities as part of the estate, and secured releases from the intervening heirs by fraud and concealment, and that the estate has been fully probated and all claims and costs of administration fully settled in the probate court, and that nothing remains to be done except to distribute the funds and securities in question among the lawful heirs.

10.　SAVING QUESTIONS FOR REVIEW—*objection before master as prerequisite to right to review failure to file replication.* Failure of cross-complainants and intervenors to file replications to complainant's answers to the cross-bills and intervening petition is

not reviewable where the case was referred to the master, testimony taken thereon on behalf of all parties and a full and complete hearing had on the merits without objection by complainant on that point.

11. APPEAL AND ERROR—*refusal of leave to amend not reversible in absence of abuse of discretion.* An order of the chancellor refusing complainant leave to amend his answer to an intervening petition and also his original bill is not erroneous where the request for leave came late and no abuse of discretion is shown.

12. FORMER ADJUDICATION—*approval of final accounts obtained by fraud of administrator not res judicata as to rights in assets concealed by administrator.* An order of the probate court approving and settling complainant's final account as the administrator of the estate of his deceased sister is not *res judicata* as to the rights of heirs of such decedent in certain assets of the estate which complainant concealed and did not include in his inventory, and as to which assets there was no adjudication by the probate court by reason of the fraud of complainant upon the heirs and the court.

Appeal by complainant from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed August 13, 1923. *Certiorari* denied by Supreme Court (making opinion final).

HENRY MANSFIELD and DAVID J. COWAN, for appellants.

WEIL & BARTLEY, MILLER, ELLIOTT & WESTERVELT and EVANS, GALBRAITH, SUTHERLAND & EVANS, for appellees William Harrigan et al.

D. W. EVANS, for appellee William E. Stone.

MR. JUSTICE JETT delivered the opinion of the court.

This suit was instituted by the appellant, Christopher Harrigan, in his individual capacity and also as the administrator of the estate of Kate Harrigan, deceased. He filed his bill to the January term, 1921, of the circuit court of Peoria county, against William E.

Stone, appellee, as sole defendant for an accounting and for an order upon the defendant to pay to and turn over to the appellant, in his individual capacity, certain notes, bonds and other evidences of indebtedness, together with the interest thereon and proceeds therefrom which were deposited by the said appellant and his sister, Kate Harrigan, in her lifetime with appellee under an agreement of indemnity given by the said Harrigans to the appellee, because of his having become surety on a certain appeal bond required of the said Harrigans.

This indemnity agreement was dated October 16, 1912, and on November 19, 1914, was modified by permitting the said Harrigans to withdraw certain bonds and certificates and depositing others in lieu thereof. Certain amendments were made to the bill because demurrers had been interposed thereto and sustained.

Appellee answered the bill as amended. Thereafter intervening petitions were filed by William Harrigan, Charles Finnell, Matt Joyce, Mary Joyce, Gertrude Joyce and Ernest J. Galbraith, administrator of the estate of Winifred Harrigan, deceased, heirs of Kate Harrigan, deceased, claiming that the assets in the hands of appellee Stone were never inventoried and that they, as the heirs of Kate Harrigan, were entitled to a share in the property of Kate Harrigan deposited with the said William E. Stone, as aforesaid. The said intervening petitions were filed by leave of the court over the objections of the complainants in the original bill. All of the intervenors, claimed as heirs of Kate Harrigan, deceased, alleged in their petition that the collaterals which were deposited with Stone by her belonged to her and did not belong to Christopher Harrigan as claimed by him in the original bill, and that as heirs of Kate Harrigan, deceased, they were entitled to said securities.

Ernest J. Galbraith, administrator *de bonis non* of the estate of Michael Harrigan, deceased, filed an in-

tervening petition alleging that a certain note known as the Wolland note, which was deposited with appellee Stone by Christopher Harrigan, was the property of the estate of Michael Harrigan and should be turned over to him as administrator of the estate of Michael Harrigan, deceased. The said Michael Harrigan, deceased, was a brother of Christopher and Kate Harrigan.

In the original bill, as amended, Christopher Harrigan claimed to be, in his own individual right, entitled to all the collateral deposited by Kate Harrigan because as administrator of her estate he had advanced money to make final settlement with her heirs and that her said heirs had released and remised to him the said collateral and other assets of her estate. While this cause was pending the fact developed that Kate Harrigan in her lifetime had a safety deposit box in one of the banks in the City of Peoria at the time of her death, and after the appointment of Christopher Harrigan as the administrator of her estate the said Christopher Harrigan went to the bank and in the presence of witnesses took from said box approximately $17,000 in securities and gave to the bank a receipt therefor.

After it developed that Christopher Harrigan had obtained the securities that were in the safety deposit box of the said Kate Harrigan, deceased, her heirs, by leave of the court first had and obtained, filed a cross-bill in which they alleged ownership of said securities to have been in Kate Harrigan at the time of her death and that the same had not been inventoried nor accounted for by Christopher Harrigan in the final settlement with them, and that the above-mentioned receipts and acquittances executed by them were fraudulently obtained from them through the concealment of the facts by the administrator, that Christopher Harrigan should be compelled to account in this proceeding to them for said securities, and that said

heirs were in ignorance of the ownership of Kate Harrigan of said collaterals and securities until the facts were brought out during the hearing of this cause on the original bill as amended and that they should not be bound by their said receipts except to the extent of the money and property which they had actually received.

Christopher Harrigan interposed a demurrer to the cross-bill which was overruled. The cause was referred to a master to take and report the proofs together with his conclusions of fact and law. The master made his report finding in favor of the intervenors and cross-complainants. Objections were filed by Christopher Harrigan in his dual capacity and were overruled by the master. These objections were permitted to stand as exceptions before the chancellor. Upon a hearing by the chancellor the master's report was approved and a decree in conformity with his conclusions was rendered. This appeal is prosecuted from this decree.

At the conclusion of his original brief and argument, appellant states a summarization of his contentions and assigns his reasons for a reversal of the decree rendered in this cause and we will take them up in the order as summarized by him.

The first contention is that William E. Stone was not required to account for $126.48, which appellant claims should have been accounted for by him. Counsel for appellant does not call our attention to any facts or circumstances from which we can determine whether or not the said Stone failed to account for the said sum. The facts upon which such error is alleged to exist are not pointed out in the brief, nor discussed therein, and we are therefore not called upon to search the record, or to recast the account in order to determine the question.

The second contention, as summarized by appellant, relates to an alleged deficiency in the sum ordered by

the court to be accounted for and paid over by the said William E. Stone, out of the funds deposited by the late Kate Harrigan, in the gross sum of $388.76. In this respect, also, appellant fails to call our attention to any fact or circumstance from which we can determine whether or not the said Stone failed to properly account in this particular respect. Stone, in his argument, claims that $200 of said sum claimed not to have been accounted for is in fact accounted for, and that he is unable to determine the existence of the claim for the balance, and from what we have been able to gather from the record in this proceeding, we think he is right in that behalf.

The third contention relates to the Wolland note. The pleadings in the case admit that the Wolland note and mortgage were the same note and mortgage mentioned in a certain opinion of the Supreme Court (*Heinrich v. Harrigan*, 288 Ill. 170), which opinion is alluded to in the record in this cause, and in which the Supreme Court held the said Wolland note was not the property of Christopher Harrigan, but was the property of his brother, Michael Harrigan, and should have been inventoried as a part of Michael Harrigan's estate. Christopher seeks to avoid the force of this opinion by claiming that in the settlement of the estate this note was alloted to him.

Some time prior to the bringing of this suit, Christopher Harrigan withdrew from Stone the said Wolland note and mortgage and in lieu thereof deposited with him $3,000, which was the amount of principal and interest due on said note. Christopher Harrigan now claims, in his own right, said cash so deposited with interest thereon. He claims that he used money of his own to effect this withdrawal, but he is not corroborated and we are inclined to believe that it is more likely the maker of the note paid it off than that Christopher took it over to himself to hold. The chancellor was right in directing said sum of $3,000 and interest

to be turned over to the administrator *de bonis non.*

A question is raised as to the right of Ernest J. Galbraith, who claims this fund as administrator *de bonis non,* because he qualified as such as public administrator and at the time of this hearing, and for some time prior thereto, he was not public administrator, his tenure of office having been terminated. Under the decisions of the court, and under the rule as we understand it, he had a right to finish his duties in unsettled estates, even after his term of office had terminated. *Ramsay v. Van Meter,* 300 Ill. 193.

As summarized by appellant, his fourth contention is that the chancellor erred in ordering William E. Stone to pay over to a receiver, to be appointed by the court, all funds deposited by Kate Harrigan with him, the said Stone, save and except four certificates of deposits and three City of Chicago warrants. Appellant contends that Stone should have been required to turn over to him all of the funds and securities deposited with him by the said Kate Harrigan. We are of the opinion the record wholly failed to establish the claim of appellant to this fund. It seems to be reasonably clear that he did not inventory the same, and that, in his settlement, such deposit by her was not known to or considered by the intervenors. Therefore the acquittances given him are not binding upon them and said appellant should not be permitted to profit thereby.

In his fifth reason assigned, appellant claims that the decree is erroneous in directing him to pay over and account for, to the receiver, to be appointed by the court, the proceeds of the safety deposit box, save and except $3,300 in bonds and the proceeds thereof. We cannot agree with the contention of appellant in this respect. The decree of the court was correct in requiring Christopher Harrigan to pay over to the receiver, to be appointed by the court, all of the proceeds of said safety deposit box, with the exception of $3,300 in bonds and the proceeds thereof.

The evidence shows that all of the contents of the said deposit box belonged to Kate Harrigan. It was rented in her name and there was proof that the evidence of indebtedness belonged to her, in her lifetime, and there is no certain proof of any transfer ever having been made by her to the appellant. It is true that appellant, Christopher Harrigan, and his sister, Maggie, testified as to such transfer but the improbable story they told cannot be credited by us. Inasmuch as $3,300 of these securities were inventoried by Christopher Harrigan, as administrator of the estate of Kate Harrigan, it was proper for the court to allow him securities to that amount, as it did.

The sixth reason assigned by appellant for a reversal of the decree in this cause is based on the claim that his final report as administrator of the estate of Kate Harrigan, deceased, shows that he distributed $551 more than he had received, and that the decree does not take such fact into consideration, and that he should have been allowed, out of the assets, found by the chancellor to belong to the estate of Kate Harrigan, a credit for such sum. The accounts involved in this group are very numerous and complex, and it is difficult for us to determine whether or not the master or the chancellor did or did not in fact take this matter into consideration, but, even if they did not, the objection cannot be raised here because complainant filed no objection before the master, nor any exception before the chancellor, raising the question.

The seventh summarization of reasons relied upon for a reversal by appellant is the court did not order that the cross-bill of the cross-complainants and the several intervening petitions filed by said cross-complainants, and by Ernest J. Galbraith, administrator of the estate of Michael Harrigan, deceased, be dismissed for want of equity. We do not think the court erred in its actions relative to said cross-bill, and the respective intervening petitions.

A further reason relied upon by appellant is that the bill filed by the cross-complainants was not germane to the original bill. One of the close questions involved in this case, in our opinion, is whether or not the cross-bill was germane to the original bill. The original suit or proceeding was between the original complainant, Christopher Harrigan, and the original defendant, William E. Stone, and involved only certain securities and the claim made therefor by appellant. It is quite certain that if the controversies involving the administrator *de bonis non* and the intervening petitioners had not involved the securities which were deposited with Stone, then, and in such case, a cross-bill filed by certain of said intervening petitioners, and claiming another and a different fund, which was in nowise connected with the other fund, could not be said to be germane. But it seems that inasmuch as the court properly permitted the intervenors to set up a claim to the funds deposited with Stone, and since it was necessary in such proceeding to litigate the rights of such intervenors, as heirs of Kate Harrigan, to assets which they claimed belonged to her estate, and which were deposited with Stone, we can see no impropriety in broadening the scope of the litigation, as contemplated by the cross-bill, so that all questions concerning their rights to other assets belonging to her estate, and which were in the hands of Christopher Harrigan, might be settled and determined in the same proceeding and suit.

In relation to the ninth reason relied upon by appellant, from what we have already said it will readily be seen that it necessarily follows that the court did not err in holding the releases not binding upon said intervening heirs of Kate Harrigan, deceased. They were obtained through fraud and concealment, and should not be urged against said intervenors, except to the extent of the assets actually received and receipted for by them.

We are of the opinion that there is no merit in the

tenth contention of said appellant why said decree should be reversed. There is nothing in the claim of said appellant that the intervening heirs of Kate Harrigan, or any of them, were guilty of laches. Neither can it be said that there is any merit in the contention that their receipts became merged in the final order of the probate court, approving the final report of Christopher Harrigan, as administrator. It is well settled that final receipts, given by administrators, trustees and guardians, are not conclusive against the heir, *cestui que trust,* or ward, when fraud has been employed in obtaining such receipts and such final settlement. Any settlement is subject to be reviewed by a court of equity in case of fraud. It is further urged that these proceedings contemplated an administration of the estate of Kate Harrigan in the circuit court; that said intervenors and cross complainants have no right to a distribution of said funds in the circuit court, even if it be found tha; she was the owner of said securities and funds at the time of her death, that this is an effort to oust the probate court of its jurisdiction.

We cannot agree with this position and contention of appellant. The record discloses the fact that all of the claims and costs of administration were fully settled in the probate court, and that there remained nothing to be done except to distribute the funds in the hands of the administrator among those who were lawfully entitled to receive the same as heirs. It now appears that because of fraudulent concealment, both in the inventory and in reference to failure to reveal the facts to the heirs, in the final report and otherwise, both the court and the heirs were fraudulently imposed upon. A large amount of assets were left in the administrator's hands undistributed, and, as to such assets, he is to be held as a trustee *de son tort,* and as to the funds in the hands of Stone, there is no occasion to add any costs and expenses on the heirs

by requiring the fund to be further administered upon, but justice and expediency require that such property be directly and immediately distributed to those entitled to same. In addition to the reasons above especially summarized by appellant why the decree in this cause should be reversed, other questions are raised and argued in appellant's brief.

The point is made by appellant that no replications were filed by intervenors and cross-complainants to answers of said appellant; that no issue was joined. We think the point is not well taken because the case was referred to the master without objection, testimony was taken on behalf of all the parties and a full and complete hearing had upon the merits. Complaint is also made by appellant that he was denied leave to amend his answer to the intervening petition of Galbraith as administrator *de bonis non*, also to amend the original bill. The leave asked for came late, and the matter was within the sound discretion of the court, and in the absence of anything to show that the chancellor abused his discretion, we are not inclined to interfere with the court's ruling.

It is also claimed by appellant that the adjudication of the county court of Tazewell county, upon the final accounts of Christopher Harrigan, administrator, is *res judicata*. This suit was instituted by the appellant in a court of equity in Peoria county; he chose his own forum and this is an action *in personam* and follows the person. This claim involves the fund which said Christopher Harrigan, administrator, held in trust because of the fact, as we have held, he had failed to properly account for the funds and securities that came into his hands as administrator of the estate of the said Kate Harrigan.

There was no adjudication had in the county court of Tazewell county of and concerning the funds fraudulently concealed by the administrator. The fact is, the county court of said county, as well as the heirs

of Kate Harrigan in relation to that fund, was deceived by appellant as we have already seen.

We do not understand that the appellant Harrigan, in view of the facts as we find them to exist in this cause, is in a position to invoke the rule of *res judicata*. The doctrine of former adjudication is that whatever matters have been finally determined on the merits, in any action or proceedings in a court having jurisdiction, are concluded by such adjudication and cannot again be litigated between the same parties or their privies either before the same or another tribunal until the adjudication has been duly reversed, modified or otherwise adjudged erroneous.

The doctrine of *res judicata* does not rest entirely upon the fact that a particular proposition has been affirmed or denied in the pleadings, but rather upon the fact that such proposition has been fully and fairly investigated and tried, that the parties have had an adequate opportunity to say and propose all that they can in relation to it, and that the mind of the court has been brought to bear upon it and so it has been solemnly and finally adjudicated. *Weidner v. Lund,* 105 Ill. App. 454-455.

The conduct of appellant in concealing the facts from the heirs of Kate Harrigan and from the county court prevented any adjudication of and concerning the fund involved in this branch of this proceeding.

We conclude, therefore, that the rule of *res judicata* cannot be successfully invoked by appellant Harrigan. Certain cross errors have been assigned. We do not consider that there is merit in them. We are of the opinion the decree of the circuit court of Peoria county should be affirmed in its present condition, which is accordingly done.

*Decree affirmed.*